Wanamaker, J.
These two eases, because they involve essentially the same question of fact and principles of law, have been heard and considered together. The first case was merely an appropriation in the insolvency court; the second case was one of injunction, begun in the court of common pleas, where all legal and constitutional questions were more properly raised. The opinion is especially directed to the latter case, which challenged, both as to facts and law, the power of the board of park commissioners of the Cleveland metropolitan park district. Upon the issues joined a referee was appointed by the court of common pleas to take the testimony and report the findings of fact. The referee’s findings of fact, so far as pertinent, are as follows:
“(1) The board of commissioners of the Cleveland metropolitan park district is not chargeable with any dereliction or neglect of duty in conducting the administrative affairs of the Cleveland metropolitan park district.
“(2) The charge that the activities of the board have been made the subject of private gain for certain present and past members and functionaries of the board and persons in close relationship thereto, by means of creation of inflated and artificial *499 values of land held and acquired by them, is not sustained.
“(3) The plans of the board of commissioners of the Cleveland metropolitan park district contemplate the improvement of land areas already acquired for park and recreational purposes and for such other uses as the same may be put to by the population of Cleveland, its suburbs, and adjoining territory.
“(4) The facts do not show that it is proposed to build and construct an elaborate system of boulevards and driveways, or that such is the paramount and real purpose of the Cleveland metropolitan park district.
“ (5) The facts do not show the defendant board and its members to be usurping the functions and powers of the board of county commissioners of Cuyahoga county, Ohio, or that the funds collected through taxation are being expended for purposes other than in the conserving of natural resources.
“(6) The facts show that the Cleveland metropolitan park district, through its board of commissioners, is engaged in the conserving of natural resources through the creation of parks and parkways, the purpose of which is to afford to the people places for recreational and health purposes, and in preserving the natural beauty and scenery of the land areas owned by it and for all uses to which it can be put.
“ (7) The weight of the testimony as adduced by expert witnesses as to what is meant by the phrase ‘conservation of natural resources’ shows that it is not limited to such subjects as land, water, forests and minerals, nor does the testimony show that the *500 National Congress of Conservation, held at Washington, attempted to exclude other natural resources, or to the safeguarding of objects provided by nature, which could be or should be used in an economic way, and for the production of pecuniary values, but it includes the acquiring of lands for park areas and the development thereof, the use of which will contribute and be appropriate for the health and general welfare of the community and with those things which are found in nature that can be used to meet some human need.”
Exceptions were duly taken to such findings of fact, and a hearing had in the court of common pleas. That court, upon the issues joined, and the findings of fact of the referee, found in favor of the park commissioners. Error was thereupon prosecuted to the Court of Appeals, where the judgment below was affirmed.
It is now sought to reverse the judgment of the court below upon both questions of fact and law. The referee’s findings of fact, upon a most painstaking and lengthy hearing unusually voluminous of record, followed by the approval and judgment of the court of common pleas, and affirmed by the unanimous judgment of the Court of Appeals, are conclusive upon this court, unless it should appear —which it does not—that there is no evidence to support any essential finding of fact.
The first question of law involved is whether or not the board of park commissioners exceeded its statutory powers. The original act passed by the Legislature in 1911, dealing with the subject-matter of this action, was followed by numerous other acts and amendments thereto in 1915,1917 and 1919. It *501 would be unprofitable to minutely examine and review the various changes in these acts and the enlargement of power therein granted. Suffice it to say that we agree with the findings below that there is no evidence in the record of substantial violation of the statutes in the exercise of power thereunder touching the issues involved.
We come next to the constitutional questions, which are the major ones presented for our consideration and chiefly relied upon for a reversal of the judgment below. The first and fundamental principles of our American written Constitutions, as construed and applied by our courts, will be helpful in arriving at a just and sound conclusion. Primarily our national Constitution is a delegation of power to the national government. Upon the contrary, our state Constitutions are primarily denials or limitations of power to the state government and its various branches. Upon this general proposition of distinction between the two Constitutions, national and state, there is a substantial agreement among courts and Constitution writers. The major question, therefore, is: Is there a denial to the state of Ohio in its written Constitution of the power sought to be granted by the various sections of the statutes involved?
The several acts of the General Assembly, not only in their preamble, but by their provisions, clearly undertook to provide for the conservation of the natural resources of the state, including streams, lakes, and submerged and swamp lands, and undertook to provide for the creation, development and improvement of park districts for such purpose; and, necessarily, in order that a public *502 park or park district shall be available and serviceable to the public, it must have public ways or boulevards appropriate thereto.
The general scheme and scope of these various statutes, as shown by their terms, are not in dispute. It is admitted, of course, that this involves in its broad sense the police power of the state of Ohio. That power has been before this court and very fully considered in a number of leading cases. Those that are most akin to the case at bar are the following: State Board of Health v. City of Greenville, 86 Ohio St., 1, 98 N. E., 1019, Ann. Cas., 1913D, 52; Brissel v. State, ex rel. McCammon, 87 Ohio St., 154, 100 N. E., 348; County of Miami v. City of Dayton, 92 Ohio St., 215, 110 N. E., 726; Wessell v. Timberlake, 95 Ohio St., 21, 116 N. E., 43, Ann. Cas., 1918B, 402, and many others to like effect.
Of necessity the police power must be as expansive as the public needs. It is obvious that those public needs, as interpreted and applied to the public welfare of densely populated districts, are quite different than the public needs of rural communities.
The General Assembly of Ohio at a very early date sought to confer upon municipalities the power to create parks and parkways, and that power has never been seriously questioned, and it is too late to question such power in this the twentieth century. If the General Assembly could confer that power upon a municipality, it is self-evident that it could likewise confer it upon any district or other political subdivision of the state. The usefulness or the serviceableness of public parks, with the necessary or appropriate driveways and boulevards, bears *503 such a reasonable relation to the public health, recreation, and welfare that to hold otherwise would be the sheerest nonsense.
The state’s general police power in this respect is therefore clear and conclusive unless some express provision of federal or state Constitution expressly or by necessary implication denies such power. It is urged in favor of a reversal that the constitutional amendment of 1912 (Section 36, Article II), dealing with the conservation policy, does in terms deny that power. That amendment reads as follows:
“Laws may be passed to encourage forestry, and to that end areas devoted exclusively to forestry may be exempted, in whole or in part, from taxation. Laws may also be passed to provide for converting into forest reserves such lands or parts of lands as have been or may be forfeited to the state, and to authorize the acquiring of other lands for that purpose; also, to provide for the conservation of the natural resources of the state, including streams, lakes, submerged and swamp lands and the development and regulation of water power and the formation of drainage and conservation districts; and to provide for the regulation of methods of mining, weighing, measuring and marketing coal, oil, gas and all other minerals.”
The language, “Laws may also be passed * * * to provide for the conservation of the natural resources of the state, including streams, lakes,” etc., is so broad and comprehensive that any natural tract of land bearing a reasonable relation to these words is clearly comprehended within the terms of this constitutional amendment. Indeed, it is diffi *504 cult to view this language as a limitation because of the broad blanket power given the General Assembly of Ohio.
We find nothing in the special amendment of 1912 in any wise limiting or denying the power exercised by the General Assembly in the enactment of the statutes involved in the eases, and we therefore hold not only the statutes valid, but the proceedings had thereunder as involved in these eases, within the purport of such statutes. The judgments of the courts below are therefore affirmed in both causes.

Judgments affirmed.

Marshall, C. J., Robinson, Matthias, Day and Allen, JJ., concur.
Jones, J., took no part in the consideration or decision of the cases.